## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JIMMIE L. FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-CV-43-NJR-DGW |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| LILLIAN OVERALL, and | ) | |
| SAMANTHA HAGENE, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge**

Plaintiff Jimmie Ford is an inmate in the custody of the Illinois Department of Corrections at Menard Correctional Center. He filed this lawsuit pursuant to 42 U.S.C. § 1983 on January 11, 2013, alleging that Defendants were deliberately indifferent to his serious dental needs in violation of the Eighth Amendment. More specifically, Plaintiff claims that Defendants failed to treat his broken tooth for approximately ten months despite his numerous requests for dental care. This matter is currently before the Court on the Motion for Summary Judgment filed by Defendants Lillian Overall and Wexford Health Sources, Inc. (Doc. 82) and the Motion for Summary Judgment filed by Defendant Samantha Hagene (Doc. 85). The Court has carefully considered the briefs and all of the evidence submitted by the parties, and for the reasons set forth below, the motions are granted.

<u>BACKGROUND</u>

Defendant Wexford Health Sources, Inc. ("Wexford") is a private corporation that contracts with the Illinois Department of Corrections ("IDOC") to provide dental services to inmates detained in IDOC facilities. At all times relevant to this lawsuit, Defendant Lillian Overall was employed by Wexford as a dentist at Menard Correctional Center ("Menard"). Defendant Samantha Hagene was employed by the State of Illinois as a dental hygienist at Menard.

Under Wexford's policies, inmates must be examined by a dentist every two years (Doc. 83-5, p. 3). If an inmate needs other dental care, he can request it by submitting a sick call request to the dental department, or by contacting his gallery officer, work supervisor, line officer, or any staff member (*Id.*; Doc. 98, p. 3). Inmates are then scheduled for treatment according to the severity of the complaint (Doc. 83-5, p. 3). The receptionist in the dental department is responsible for scheduling inmate appointments, not the dentists or the hygienists (Doc. 83-2; Doc. 86-2).

It is undisputed that inmates experiencing a dental emergency (as defined by the staff dentist) are given top scheduling priority, and they must receive a dental exam no later than the next working day after the emergency occurs (Doc. 98, pp. 4–5, 8, 9). Examples of emergency situations include severe pain, bleeding, swelling, or acute infection (*Id.* at pp. 4–5, 9). For non-emergency or specific, routine dental care, the service must be scheduled, but not necessarily performed, within fourteen days of the request (Doc. 98, p. 4). For all other dental care, the inmate must be examined by dental personnel within fourteen days of the request, unless the offender is already scheduled

for treatment or service regarding the same request (*Id.*).

In this case, Plaintiff underwent a two-year exam on July 22, 2010 (Doc. 83-3, p. 1). At that exam, it was determined that Plaintiff had a cavity, and he was added to the filling list as well as the teeth cleaning list (*Id.*; Doc. 83-1, p. 6).[1] As best Plaintiff remembers, the cavity was in his number 12 tooth (Doc. 83-1, p. 6).[2] Nearly eleven months went by, and Plaintiff was not seen for either a filling or a teeth cleaning (*see* Doc. 83-3, p. 1). On June 14, 2011, Plaintiff's number 12 tooth broke (Doc. 83-1, p. 5). Plaintiff claims that he experienced "excruciating" pain and had a "little bit" of bleeding and some puffiness on the upper left side of his cheek (Doc. 83-1, pp. 6, 14). It is not clear how long the bleeding or swelling lasted.

According to Plaintiff, he submitted a request to see the dentist on the same day that his tooth broke (Doc. 83-1, p. 5; Doc. 97-1, p. 1). He placed his request in the sick call box, but he never received a response, and he was not called to see the dentist. There is no indication that the dental department ever received the June sick call request (*see* Doc. 83-3, p. 1; Doc. 83-4, p. 2). Plaintiff did not immediately write another request, however, because he thought he was going to see the dentist in July for his "birthday exam" (Doc. 83-1, p. 5).[3] However, he was not seen during the month of July. On August 8, 2011, he wrote a letter addressed to the "Healthcare Dental Department" and placed it in the sick call box (Doc. 83-1, pp. 6–7). In the letter, he stated that he had a broken tooth and was in

---

[1] The dental records note "Class III A+B," meaning Plaintiff had a "medium-to-large non-painful carious lesion" (a cavity) with "localized gingival involvement" (Doc. 83-3, p. 1; Doc. 94, p. 26 – Plaintiff's response to Hagene's ).

[2] The dental records do not indicate which tooth had the cavity (*see* Doc. 83-3, p. 1).

[3] Plaintiff apparently believed that he saw the dentist once a year for his "birthday exam." (Doc. 83-1, p. 5). As previously stated, however, inmates undergo an exam every two years (Doc. 83-5, p. 3).

pain, and he asked to be seen by a dentist as soon as possible (Doc. 83-1, p. 7). There is no indication that the dental department ever received the August letter, and Plaintiff never received a response (*see* Doc. 83-3, p. 1; Doc. 83-4, p. 2).

Plaintiff apparently heard nothing and saw no one until he was called to the Dental Department on December 5, 2011, for a teeth cleaning (Doc. 83-1, p. 7; Doc. 97-1, p. 2).[4] Per the standard practice, Plaintiff was met in the reception area by Defendant Hagene (Doc. 86-2, pp. 1, 2; *see also* Doc. 83-1, pp. 7–8). Hagene told Plaintiff that he was there to have his teeth cleaned and asked him to sign the co-pay voucher (Doc. 86-2, p. 1).[5] Plaintiff told Hagene that he wanted to see the dentist because his tooth hurt (Doc. 83-1, p. 7). Hagene responded that Plaintiff could not see the dentist; he could only see her or refuse treatment (*Id.* at p. 8). He refused to sign the co-payment voucher (Doc. 86-2, p. 2). And, according to Plaintiff, he "created a scene" by audibly yelling "I would like to see a dentist" (Doc. 83-1, p. 8; Doc. 97-1, p. 3). In response to Plaintiff's yelling, nearby staff came into the reception area, including a correctional officer and Dr. Overall (Doc. 83-1, p. 8). Hagene grabbed Plaintiff's dental file and told him that he was scheduled for a filling, and Dr. Overall told him that he would be scheduled for an appointment to see a dentist (*Id.* at p. 8, 9; Doc. 97-1, p. 3). When he asked for pain medication, nobody responded (Doc. 83-1, p. 8; Doc. 97-1, p. 3). The receptionist then told Plaintiff to sign the Medical Services Refusal form, which he did (*Id.*; Doc. 86-2, p.4).

---

[4] As best the Court can tell, Plaintiff was called for a teeth cleaning as a result of his two-year exam sixteen months earlier on July 22, 2010, where he was added to the teeth cleaning list (*see* Doc. 83-3, p. 1). The records do not indicate that Plaintiff received a teeth cleaning prior to December 5, 2011.

[5] The co-pay voucher authorizes the release of funds from an inmate's trust fund account (Doc. 86-2, p. 1). Inmates are asked to sign the voucher prior to the examination or cleaning to ensure that they do not refuse to sign after they received treatment (*Id.*).

It is undisputed that Plaintiff's teeth were not examined, and he did not receive any pain medication while he was in the dental department on December 5th (Doc. 86-2; Doc. 83-2)

In the weeks that followed, Plaintiff was not called back in to see the dentist (*see* Doc. 83-3, p. 1). He claims that he then submitted three or four additional sick call requests, but he did not provide any details regarding the date on which they were submitted, to whom they were addressed, what they said, or how he submitted them (Doc. 83-1, p. 9; Doc. 97-1, p. 3). He also mailed a letter to Dr. Overall on February 24, 2012 (Doc. 83-1, p. 9). In the letter, he explained that he was in pain and asked to be moved up on the list to see the dentist and for pain medication (*Id.*). There is no indication that the dental department ever received the sick call requests or the letter, and Plaintiff never received a response to any of them (*see* Doc. 83-3, p. 1; Doc. 83-4, p. 2).

Plaintiff's dental records indicate that on March 14, 2012, he was added to the list to see a dentist (Doc. 83-2, p. 2; Doc. 83-3, p.1).[6] There is no evidence as to whether Plaintiff was notified of his placement on the list or when he was expected to be seen for that appointment. A week later, Plaintiff submitted a grievance complaining about his broken tooth and asking to see the dentist immediately (Doc. 41-2, p.5). He received a response from the nursing supervisor on March 28, 2012, which stated:

> I spoke with dental who informed me that on 12-5-11 you refused to have teeth cleaned. Per your request at that time you were put on the list to be seen for your complaint of broken teeth, but understand once placed on the list, which is very long, you have to wait your turn. If your teeth are now causing you pain . . . I would recommend that you put in a sick call slip to

---

[6] The dental record contains the notation "J.R. AOL. 02 List" (Doc. 83-3, p. 1). Dr. Overall's affidavit indicates this this notation means Plaintiff was added to the "treatment list . . . to receive a filling" (Doc. 83-2, p. 1).

the dentist and let them know you are experiencing pain so that they can arrange to see you sooner if needed.

(Doc. 41-2, p. 8). After receiving that response, Plaintiff testified that he had another inmate, James Munson, hand deliver a sick call request to the dental unit on his behalf (Doc. 83-1, p. 9). There is no indication that the dental department ever received the sick call request, and Plaintiff never received a response (*see* Doc. 83-3, p. 1; Doc. 83-4, p. 2).

Plaintiff submitted a second grievance on April 2, 2012 (Doc. 41-2, p. 3). Eight days later, his counselor responded with a note from the nursing supervisor stating that she had spoken to the dental department and they had not received any kites from Plaintiff as of April 6, 2012 (Doc. 97-1, pp. 6, 7). If they had received a kite, they would have tried to move his appointment up (*Id.*at p. 6).

On April 19, 2012, Plaintiff was finally called to the dental department for an examination by Dr. Henderson (*see* Doc. 83-3, p. 1; Doc. 97-1, p. 4).[7] Defendants made no effort to decipher the illegible portions of the dental records from that exam, but the Court can still make out that Plaintiff's No. 12 tooth was fractured and sensitive when it was tapped on (Doc. 83-3, p. 1).[8] Plaintiff was diagnosed with "irreversible pulpal hyperemia," and after discussing his options, Plaintiff stated that he wanted the tooth extracted (*Id.*). Plaintiff was prescribed pain medication as well as an antibiotic and scheduled for an extraction of his tooth (Doc. 83-1, p. 10; Doc. 83-3, pp. 1, 4). Seven days later, Plaintiff's broken tooth was extracted by Dr. Newbold (Doc. 83-3, p. 1.). Plaintiff has not had any issues with tooth pain since the extraction (Doc. 83-1, p. 10).

---

[7] The dental records indicate that this appointment was for Plaintiff's two-year examination (Doc. 83-3, p. 1).
[8] The dental note reads: #12 – DOA_ _, B c_ _ _ _ _. Lingual fracture – no swelling – percussion sensation (or sensitive) (Doc. 83-3, p. 1).

During much of the time period at issue, Wexford provided one full-time dentist at Menard (Doc. 83-5, p. 2). Wexford admits that under its contract with the IDOC, however, it was required to provide two full-time dentists at Menard (*Id.*). Wexford was actively trying to fill the vacancy from May 2011 to February 2012 (*Id.*). The vacancy was listed on Wexford's career website, Monster.com, Healthcareers.com, and Indeed.com (*Id.*). Wexford also ran an ad in the Southern Illinoisan and sent a postcard mailer to dentists licensed in the relevant geographic area (*Id.*).

<u>D</u>ISCUSSION

## A. Legal Standard for Summary Judgment

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial . . . . A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

## B.  Deliberate Indifference

In *Estelle v. Gamble,* the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty upon states to provide adequate medical and dental care to incarcerated individuals. 429 U.S. 97, 103 (1976). But not every instance of arguably deficient medical care creates a cause of action for a prisoner. In order to succeed on an Eighth Amendment claim for inadequate medical care in a prison, a prisoner must show that a responsible state official was deliberately indifferent to his serious medical condition. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 834 (1994). "This standard erects two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago County,* 165 F.3d 587, 590 (7th Cir. 1999).

First, the plaintiff must demonstrate that his medical condition was "objectively, sufficiently serious." *Greeno v. Daley,* 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). An objectively serious medical condition includes "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment." *Hayes v. Snyder,* 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie County,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessary for a doctor's attention."). It also includes a "condition that significantly affects an individual's daily activities or the existence of chronic and substantial pain." *Hayes,* 546 F.3d at 522-23 (quoting *Gutierrez,* 111 F.3d 1373). "Notably,

'[a]medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010)).

Second, the plaintiff must demonstrate that the "prison officials acted with a sufficiently culpable state of mind," namely deliberate indifference. *Greeno*, 414 F.3d at 653. A prison official acts with deliberate indifference if they know of a serious risk to the prisoner's health and consciously disregard that risk. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Id.*; *accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Deliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence does not violate the Constitution.")

**C.  Analysis**

The heart of Plaintiff's claim is that he waited an excessively long time — ten months to be exact — for dental care for his broken tooth. The Seventh Circuit has articulated that it views dental care as "one of the most important medical needs of inmates." *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005). And under certain circumstances, a delay in providing effective dental treatment can constitute deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). The problem that Plaintiff runs into is determining who, if anyone, is ultimately responsible for that delay.

As the Seventh Circuit noted, the IDOC and Wexford have diffused responsibility for inmates' medical and dental care so widely among various prison officials and medical personnel that it is difficult to pinpoint who is responsible for seeing that a particular inmate is treated in a timely and appropriate way. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 785–86 (7th Cir. 2014). Based on the facts of this case, and other lawsuits brought in this district by inmates regarding their medical care, it appears that one employee might retrieve inmate medical requests, while another employee probably processes them, and yet another employee reviews them to assess the severity of the situation. Another employee altogether might schedule the necessary appointments, while another conducts the examination, another potentially provides or recommends treatment, and yet another may be responsible for approving the recommended course of treatment. As a result, no one employee is fully aware of the inmate's medical situation or responsible for his treatment. In other words, "no one [individual] kn[o]w[s] enough that a jury could find that he both appreciated and consciously disregarded" the inmate's need for medical care. *Shields*, 746 F.3d at 786. Consequently, it is impossible for the inmate "to pin responsibility on an individual." *Id.* at 795.

Even in situations where one person could be held responsible, it seems that the IDOC and Wexford make a calculated effort to obfuscate who it is. They provide just enough information to establish that the employees who the inmate has sued are not responsible for deficient medical treatment, but not enough information to get a full picture of the medical system, policies, and processes and infer who is ultimately responsible. The undersigned cannot think of a case in which the IDOC or Wexford laid

out a comprehensive and detailed overview of the way that the medical system is supposed to work (*i.e.*, the written policies), along with the way that the system actually works at a particular institution (*i.e.*, the day-to-day practices), and who is responsible at each step along the way.

That certainly holds true here. As further explained below, it is apparent that it is the individuals who Plaintiff seeks to hold liable—Samantha Hagene and Dr. Lillian Overall—are not, in fact, responsible for the delay in treatment that he experienced. But it is not clear to the Court who, if anyone, could be held responsible. Plaintiff's claim against Wexford is also problematic. Although the Seventh Circuit was heavily critical of the law as it currently stands, it has not been overruled, and therefore Plaintiff cannot hold Wexford vicariously liable for the collective actions of its employees. *Shields*, 746 F.3d at 789–95 (criticizing that private corporations are insulated from *respondeat superior* liability under § 1983). Instead, he must show that a policy or custom of the corporation was responsible for the delay in treatment, but he has simply not put forth enough evidence to do so.

### 1.  Samantha Hagene

Defendant Hagene first argues that she is entitled to summary judgment because Plaintiff's dental issue did not constitute a serious medical (Docs. 85, 86; *see* Docs. 82, 83). The Court disagrees. Plaintiff had a broken tooth. This dental condition can undoubtedly cause pain, and the unrefuted evidence shows that Plaintiff was in fact in pain, which made it difficult for him to eat and sleep. When he was eventually seen by a dentist, it was determined that his dental condition required further treatment, and the tooth was

extracted within one week. Accordingly, Plaintiff has put forth sufficient evidence from which a reasonable jury could find that he suffered from an objectively serious medical condition.

Defendant Hagene next argues that she is entitled to summary judgment because she was not deliberately indifferent to Plaintiff's dental needs. The Court must first look at when, if ever, Defendant Hagene became aware of Plaintiff's dental condition. The delay of treatment in this case was approximately ten months—from June 2011, when Plaintiff claims he first made a sick call request to see the dentist about his broken tooth, to April 2012, when he was finally examined and had his tooth extracted. The undisputed evidence shows that Defendant Hagene's only interaction with Plaintiff was on December 5, 2011, when Plaintiff came to the dental unit for a cleaning.

Accordingly, Defendant Hagene cannot be held responsible for the delay in treatment that Plaintiff experienced prior to December 5th. The question for the Court is whether Defendant Hagene's actions on December 5th amounted to deliberate indifference. Plaintiff claims that Hagene acted with a sufficiently culpable state of mind because he made her aware of his need for dental treatment, but she refused to examine him, and she did not refer him to see a dentist. The Court disagrees.

Defendant Hagene was not able to examine Plaintiff's teeth on December 5th because he refused to sign the co-pay voucher. It is clear that Hagene did not ignore Plaintiff's complaints or outright deny dental care; she was willing to clean and examine his teeth if he paid the required co-payment, but he refused to do so. "The Eighth Amendment does not compel prison administrators to provide cost-free medical

services to inmates who are able to contribute to the cost of their care." *Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012). And an inmate who "opt[s] to refuse treatment rather than part with his money" cannot prevail on an Eighth Amendment claim because "[e]ven though he was in pain until he received treatment, the delay in receiving care was of his own making." *Id.* at 1027.

Hagene also did not refuse, or otherwise fail, to refer Plaintiff to a dentist. By Plaintiff's own admission, Hagene checked his medical record and told him that he was already on the list to see the dentist. To the extent that Plaintiff is claiming his condition had worsened and he needed to see a dentist sooner, Hagene's responsibility as a dental hygienist was to pass along Plaintiff's complaint to someone with authority to schedule appointments or assign them priority. That was accomplished—Dr. Overall and the receptionist were present when Plaintiff made his request—and Dr. Overall stated that Plaintiff would be scheduled for a dental examination. There is no evidence that Defendant Hagene was ever instructed to take any further action. Accordingly, it seems that Hagene's actions were appropriate under the circumstances.

In sum, after considering the facts in the light most favorable to Plaintiff, the Court agrees with Defendant Hagene that Plaintiff has failed to demonstrate a genuine issue of material fact that she was deliberately indifferent to his serious dental need. There is nothing that suggests Hagene was personally responsible for the delay Plaintiff experienced in receiving an exam. Accordingly, Hagene is entitled to summary judgment on Plaintiff's claim of deliberate indifference.

### 1.  Defendant Lillian Overall

Like Defendant Hagene, Dr. Overall argues that she is entitled to summary judgment because she was not deliberately indifferent to Plaintiff's dental needs. Again, the Court first asks when Dr. Overall became aware of Plaintiff's dental condition. Plaintiff has submitted evidence demonstrating that Dr. Overall became aware of his dental condition on December 5th. Specifically, he testified at his deposition that, by shouting in the dental unit, he was able to get her attention and speak with her (Doc. 83-1, p. 8). The undisputed evidence indicates, however, that Dr. Overall did not know of his dental condition before December 5th—she had never spoken to him, much less examined him or treated him prior to that date (*see id.* at pp. 8, 9; Doc. 83-2, p. 2). There is also no evidence that Dr. Overall was updated about Plaintiff's condition after December 5th; he never saw her, she never treated him after that date, and there is no evidence that medical requests were regularly forwarded to her or that part of her job was to review medical requests (Doc. 83-1, pp. 8, 9; Doc. 83-2, p. 2). Simply put, the evidence before the Court demonstrates that Dr. Overall's only connection to Plaintiff was their brief encounter on December 5, 2011, when she happened to be present as he shouted and created a scene in the dental department.

Thus, the question for the Court is whether Dr. Overall's actions on December 5th amounted to deliberate indifference. As Plaintiff tells it, Defendant Overall ignored his request for pain reliever and did not provide a dental exam that day, which he claims is sufficient to create a question of fact about her culpability. The Court disagrees.

Based on the available evidence, Plaintiff informed Defendant Overall that he had

broken a tooth and was experiencing pain. There is no indication that he gave her any specifics about his broken tooth (such as whether the break was more than a chip) or the intensity of his pain. There is also no indication that Plaintiff exhibited any outward signs of a dental emergency, such as bleeding from his mouth or swelling. Therefore, while Dr. Overall may have been aware that Plaintiff wanted to see a dentist for a broken tooth, there is nothing that suggests Dr. Overall had any reason to suspect Plaintiff was in severe pain or otherwise needed immediate dental care. The situation that Dr. Overall encountered was an inmate with non-emergency dental problem acting in an admittedly belligerent manner at the reception desk because he was not being given the care that he demanded. The Court is unaware of any policy that dictated that Dr. Overall had an obligation to drop everything in order to immediately examine him and dispense pain medication under those circumstances. No reasonable jury could find her deliberately indifferent for not doing so.

While Plaintiff's presentation in the dental unit on December 5th was not an emergency, it nonetheless required an appointment with a dentist. Plaintiff testified at his deposition that Dr. Overall told him that he would be scheduled for such an appointment. In viewing the facts in a light most favorable to Plaintiff, the Court must assume that is true. The Court must also assume that there was a failure of some sort on Dr. Overall's part because, pursuant to the relevant policy, he should have been seen within fourteen days as his request was for non-routine dental care. At the very least, the service should have scheduled within fourteen days. But there is no evidence that any

action was taken within that fourteen day time frame.[9] But Dr. Overall's failure to ensure that Plaintiff was appropriately scheduled for an exam does not amount to deliberate indifference. As previously explained, there is no evidence that as of December 5th she knew enough to appreciate the nature and extent of his dental needs and consciously disregard them. Therefore, the failure to ensure that he was scheduled to see a dentist cannot be considered deliberate indifference; at best, it amounts to negligence.

In sum, after considering the facts in the light most favorable to Plaintiff, the Court agrees with Dr. Overall that Plaintiff has failed to demonstrate a genuine issue of material fact that she was deliberately indifferent to his serious dental need. Accordingly, Dr. Overall is entitled to summary judgment on Plaintiff's claim of deliberate indifference.

### 2.  Qualified Immunity

The Court need not consider the issue of qualified immunity because it has already concluded that the evidence, when viewed in a light most favorable to Plaintiff, does not establish a genuine issue of fact as to whether Defendant Hagene and Dr. Overall violated his Eighth Amendment rights. The Court nevertheless notes that there is a serious question as to whether Dr. Overall is even entitled to assert qualified immunity as a defense. *See Currie v. Chhabra*, 728 F.3d 626, 632 (7th Cir. 2013) (noting that

---

[9] On December 5, 2011, Defendant Hagene told Plaintiff that he was already on a list to see a dentist, however, Defendants did not submit any evidence about when that appointment was scheduled or reasonably expected to take place. Defendants also did not submit any evidence that they made any effort to move Plaintiff up on that list. There is no indication that any action was taken until three months later on March 14, 2012, when he was added to the filling list (Doc. 83-3, p. 1)

it was inclined to hold that medical personnel employed by a private company and contracted to provide medical care to inmates are categorically barred from asserting qualified immunity, but declining to definitively decide the issue); *but see Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 794 (7th Cir. 2014) (stating in dicta that "private prison employees are barred from asserting qualified immunity from suit under § 1983"), *cert. denied*, 135 S. Ct. 1024 (2015). *See also McCullum v. Tepe*, 693 F.3d 696, 701 (6th Cir. 2012) (holding that a doctor providing psychiatric services to inmates at a state prison is not entitled to assert qualified immunity).

### 3. Wexford Health Sources, Inc.

Plaintiff also claims that Wexford, as a corporation, was deliberately indifferent to his serious medical needs. Under controlling precedent, a private corporation that contracts to provide essential government services can be held liable under § 1983, but not under a theory of *respondeat superior*. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015). The corporation can only be held liable if it maintains a policy or custom that infringes upon the inmates' constitutional rights. *Id.; see also Monell v. Dep't of Social Serv. of N.Y.C.*, 436 U.S. 658 (1978).

Wexford first argues that Plaintiff cannot assert a *Monell* claim against it because Plaintiff cannot show that its employee—Dr. Overall—was deliberately indifferent. That is not true. The Seventh Circuit has held that a local government or private corporation such as Wexford can be held liable under *Monell*, even when its employee are not, so long as such a finding "would not create an *inconsistent* verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2009) (citing *Los Angeles v. Heller*, 475 U.S. 796,

798–99 (1986)) (emphasis in original). In this case, it is possible that a jury could find Plaintiff's delay in treatment was caused by a policy or practice regarding the processing of inmates' medical requests and scheduling appointments, even in the absence of constitutional violations by Dr. Overall.

Accordingly, the Court is left to determine whether there is sufficient evidence to establish that Plaintiff's Eighth Amendment rights were caused by a Wexford policy or custom. Unconstitutional policies or customs can take three forms: (1) an official policy adopted and promulgated by its employees that, when enforced, causes a constitutional deprivation; (2) a practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority caused the constitutional deprivation. *Thomas*, 604 F.3d at 303; *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003).

Plaintiff does not explicitly mention which theory he is proceeding under, and in the Court's view, the first and third theories are inapplicable. Wexford has adopted various written policies and directives with respect to dental treatment for inmates, but Plaintiff has not made any persuasive argument, and the Court cannot discern, how these policies are inadequate or unconstitutional. Furthermore, Plaintiff has not presented any evidence that an official with policy-making authority was involved in delaying his dental treatment. Instead, it appears that Plaintiff is arguing that Wexford is liable under the second theory: he was harmed by an unofficial but widespread practice. Plaintiff's primary argument is that there has been a breakdown of Wexford's policies at Menard because medical personnel routinely and consistently disregarded those

policies. In particular, Plaintiff argues that medical personnel regularly failed to process medical requests, delayed scheduling dental care, and mishandled emergency situations (Doc. 97).

When a plaintiff chooses to challenge an unconstitutional policy by establishing a widespread practice, they must demonstrate that "there is a policy at issue rather than a random event." *Thomas*, 604 F.3d at 303. That means that they plaintiff must provide evidence of "a series of bad acts" from which the court can infer that the corporation's policymakers "were bound to have noticed what was going on" yet "fail[ed] to do anything." *Hahn v. Walsh*, 762 F.3d 617, 636 (7th Cir. 2014) (citation omitted). "The Seventh Circuit has made clear that "a single incident—or even three incidents—do not suffice." *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) (citing *Thomas*, 604 F.3d at 303); *accord Palmer*, 327 F.3d at 596 ("[P]roof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference.")

Plaintiff has not presented evidence that could reasonably support the inference that Wexford had a practice or custom that caused the alleged constitutional harm. In support of his claims, Plaintiff submitted affidavits from three other inmates who indicated that their dental treatment at Menard was delayed. Those affidavits contain only general, conclusory assertions, however, and they do not provide any factual details. For example, Curtis Holmes averred that "I had a dental matter that needed to be address[ed], but the staff refused to give me proper or adequate treatment, and delayed my appointment for months." (Doc. 97-1, p. 16). Michael Cook stated "while at Menard,

the Dentist here had neglected to their duties and continued to violate my's and other inmates Constitutional Rights." (Doc. 97-1, p. 17). The third inmate, James Munson, stated that during his time at Menard, he has "complain[ed] numerous times about the dental treatment" and "the dental department at Menard has failed to provide adequate care." (Doc. 97-2, p. 1). Munson further states that "The policies at Menard allows the dental to have a massive backlog, that it takes over 3 months to provide treatment for a emergency dental need." (*Id.*). But Munson failed to set forth how he gained personal knowledge regarding the backlog in the dental department at Menard because he did not provide any facts detailing his observations or other first-hand experiences. *See* FED. R. CIV. P. 56(e) (requiring that affidavits be made on personal knowledge). Additionally, none of the three affidavits provide factual details regarding when the delays were experienced, how long the delays lasted, who was responsible for the delays, or the specifics of how the delays occurred. Therefore, all three affidavits are far too vague to serve as competent evidence of an unconstitutional custom or practice.

That leaves the Court with Plaintiff's own testimony, which admittedly provides some evidence that he experienced a delay in receiving treatment as a result of medical personnel disregarding the dental policies. Specifically, the dental department was, without a doubt, aware of at least three of Plaintiff's requests for care: his verbal request on December 5, 2011, his grievance dated March 22, 2012, and his grievance dated April 2, 2012.[10] As previously noted, the relevant policy dictated that he receive an

---

[10] Plaintiff testified that he submitted other sick call requests as well. However, he did not provide any details regarding the date on which they were submitted, who they were addressed to, what they said, or how he submitted them. And there is no evidence that the dental department ever received these requests. As such, they do not constitute competent evidence.

appointment within fourteen days of his request. But that did not happen after his verbal request or his first grievance. He was, however, seen for a dental exam seventeen days after he submitted his second grievance. Two, perhaps three, instances within a ten-month time frame is not sufficient to establish a persistent or widespread custom or practice of disregarding policies. *See, e.g., Palmer*, 327 F.3d at 596 (two incidents within one year not sufficient to impose liability on county); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) (three incidents within four years did not amount to a persistent and widespread practice.)

Furthermore, the evidence that Menard's dental department was short staffed at the time Plaintiff experienced a delay in treatment time undermines the idea that the purported practice of disregarding policies was "so permanent and well-settled that it [had] the force of law." *Looper Maint. Serv. Inc. v. City of Indianapolis,* 197 F.3d 908, 912 (7th Cir.1999). Instead, it suggests that the practice was situational, and would be cured when a second dentist was hired. Plaintiff has not provided any evidence that the delays continued once the dental department was fully staffed.

In conclusion, after considering the facts in the light most favorable to Plaintiff, the Court finds that he failed to demonstrate a genuine issue of material fact that Wexford, as a corporation, maintained a policy or custom that caused a constitutional injury. Accordingly, Wexford is entitled to summary judgment on Plaintiff's claim of deliberate indifference.

## Conclusion

For the reasons set forth above, the Motion for Summary Judgment filed by

Defendants Lillian Overall and Wexford Health Sources, Inc. (Doc. 82) and the Motion

for Summary Judgment filed by Defendant Samantha Hagene (Doc. 85) are **GRANTED**.

This case is **DISMISSED with prejudice**, and judgment will be entered accordingly.

      **IT IS SO ORDERED.**

      **DATED:   March 24, 2015**

                                    **s/ Nancy J. Rosenstengel**
                                      **NANCY J. ROSENSTENGEL**
                                      **United States District Judge**